**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | | |
|---|---|---|
| David F. Kozel, | ) | Civil Action No.: 7:16-cv-01672-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Deborah L. Kozel, | ) | |
| Michael E. Spears, Esq., Dallas C. Kozel, | ) | |
| and India L. Kozel, | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff David Kozel asserts claims of civil conspiracy, common law malicious prosecution, abuse of process, defamation *per se*, intentional infliction of emotional distress, and malicious prosecution arising under 42 U.S.C. § 1983 against Defendant Michael E. Spears, Esq. ("Defendant Spears") (ECF No. 90 at 42-43 ¶¶ 220-26, 46-51 ¶¶ 241-72, 54-55 ¶¶ 298-308.)  This matter is before the court on Defendant Spears' Second Motion for Judgment on the Pleadings. (ECF No. 270.)  Defendant Spears brings this Motion under Fed. R. Civ. P. 12(c) on the grounds that he is immune from liability because his alleged conduct in providing counsel to Defendants Dallas Kozel, India Kozel, and Deborah Kozel (collectively the "Kozel Defendants") was within his professional capacity as an attorney on their behalf.  (*See* ECF No. 270 at 3 ¶ 15.)  For the reasons stated herein, the court **GRANTS IN PART** and **DENIES IN PART** Defendant Spears' Motion for Judgment on the Pleadings.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initially filed his Complaint in this case on August 8, 2014, in the United States District Court for the Western District of Pennsylvania against Defendants Dallas Kozel ("Dallas"), Deborah Kozel ("Deborah"), India L. Kozel ("India"), Detective Scott J. Rick

("Detective Rick"), and Defendant Spears (collectively "Defendants").  (ECF No. 1-1.)  Plaintiff's claims against Defendants arise from criminal charges brought against him for the alleged sexual abuse of his daughters, Dallas and India.  (ECF No. 90 at 3 ¶ 14.)

Plaintiff and Deborah were married in 1994, but they separated in 1998, and were divorced in 2002.  (*Id.* at 6 ¶¶ 28, 31, 7 ¶ 35.)  In June 2004, both Deborah and Plaintiff were given shared custody of Dallas and India.  (*Id.* at 7 ¶ 36.)  In February 2007, the Superior Court of Pennsylvania affirmed an order requiring Plaintiff to pay $6,344 per month in child support until each child reached the age of eighteen (18).  (*Id.* at 8 ¶ 43; ECF No. 90-1 at 18.)  In March 2008, Deborah initiated a Petition for modification of child support in the Family Division of the Court of Common Pleas of Allegheny County, Pennsylvania.  (*Id.* at 8 ¶ 46; ECF No. 90-2.)  This Petition was dismissed without a hearing and affirmed by the Pennsylvania Superior Court, but Deborah filed another Support Complaint in May 2012 in the Family Court of the Seventh Judicial Circuit in South Carolina.  (ECF No. 90 at 12 ¶ 71; ECF No. 90-3.)  In addition to filing this Support Complaint, Plaintiff alleges that because Dallas was about to turn eighteen, "Deborah [ ] was concerned [that] the child support payments she received from Plaintiff would be reduced," and therefore wrote a letter to Plaintiff demanding that Plaintiff quadruple his monthly child support until each daughter turned twenty-one (21)."  (ECF No. 90 at 12-13 ¶¶ 72-73; ECF No. 90-4.)  In August 2012, the Family Court of the Seventh Judicial Circuit in South Carolina dismissed the Support Complaint for lack of personal jurisdiction.  (ECF No. 90 at 13 ¶ 74; ECF No. 90-5.)

Plaintiff alleges that the Kozel Defendants created a scheme to have Plaintiff "investigated and arrested," and that it may be tied to Deborah's requests for increased child support.  (*Id.* at 5 ¶ 26, 9 at ¶ 51.)  In November 2012, Deborah filed a Petition to modify the existing child support order between Plaintiff and her in the Family Division of the Allegheny Court of Common Pleas,

seeking an increase in child support.  (ECF No. 90 at 13 ¶ 77.)  Deborah and Plaintiff consented to the dismissal of this Petition, and Deborah refiled her Petition in Texas, which is where Plaintiff resided.[1]  (*Id.* at ¶ 78.)

Plaintiff alleges that, despite his daughters engaging in several counseling and therapeutic sessions over a period of several years, they alleged for the first time between December 2012 and January 2013 that he sexually abused them.  (ECF No. 90 at 4 ¶¶ 16-19, 6-7 ¶¶ 33-34, 7 ¶¶ 39-40, 45, 9 ¶¶ 48-52.)  These allegations were revealed when Plaintiff's daughters began treatment with Defendants Juliana Hamilton, LPC ("Hamilton") and Kimberly Rosborough, LISW-CP ("Rosborough") who are employed by Defendants Spring Ridge Academy in Arizona and Turning Leaves for Children, LLC in South Carolina, respectively.[2]  (*Id.* at 5 ¶¶ 24-25, 7 ¶¶ 39-40.)  More specifically, Plaintiff alleges that Hamilton and Rosborough treated his daughters with Eye Movement Desensitization and Reprocessing Therapy ("EMDR") resulting in the implantation of their alleged false memories of sexual abuse (*Id.* at 5 ¶¶ 24-25.)  Plaintiff alleges that "[o]n December 21, 2012, Rosborough, counselor for both [Dallas and India] and a friend of Deborah [ ], wrote in her clinical notes [that Mom said it was okay for Kimberly to talk with India about Plaintiff touching Dallas and India in the bathtub]."  (*Id.* at 14 ¶ 82; ECF No. 90-6.)  Plaintiff alleges that this note "evidences coordination amongst defendants, twenty (20) days prior to the 'alleged' first revelation [of sexual abuse]."  (ECF No. 90 at 14 ¶ 83.)

Plaintiff alleges that "[o]n January 7, 2013, approximately one month prior to her eighteenth birthday and immediately before child support was to terminate, Dallas, [ ] for the first

---

[1] The court is not aware of the outcome of the refiled Petition.

[2] Defendants Spring Ridge Academy, Turning Leaves for Children, Hamilton and Rosborough were added as Defendants in Plaintiff's Second Amended Complaint (ECF No. 90).

time, accused [Plaintiff] of sexually assaulting and physically abusing her as a child." (ECF No. 90 at 20 ¶ 112.) Plaintiff further alleges that Dallas' oral allegations regarding the nature of Plaintiff's sexual abuse were in contradiction with her written statement given to the Yavapai County, Arizona Sheriff's Department. (*See id.* 22 at ¶ 129, 23-24 ¶¶ 131, 133; ECF Nos. 90-9, 90-10.) In February 2013, Dallas and India also met with Detective Rick and detailed the nature of Plaintiff's sexual abuse. (ECF Nos. 90 at 26 ¶ 146, 27 ¶ 153; 90-11 at 7-11.) India and Dallas both met with Detective Rick again in June and July 2013 respectively, and Plaintiff alleges that their allegations were "materially different, contained numerous discrepancies and were largely inconsistent [with their statements during their first interview with Detective Rick]." (ECF No. 90 at 29 ¶¶ 161-62, 165-66; ECF No. 90-11 at 7-11.) Dallas provided a handwritten narrative after her July 2013 meeting with Detective Rick, which detailed how Plaintiff physically abused her. (ECF No. 90 at 31 ¶ 171, 173-74; ECF Nos. 90-17; 90-18.)[3]

In March 2013, "six days after Dallas and India made allegations of sexual abuse against [Plaintiff] to Detective Rick," Deborah filed another Petition to modify child support in the District Court of the 303rd Judicial District in Dallas County, Texas seeking to "indefinitely extend child support into the girls' adult life." (ECF No. 90 at 28 ¶ 156; ECF No. 90-12.) In July 2013, the District Court reduced Plaintiff's child support payment obligations to $1,239.92, and limited it to only India (a departure from the original obligation of $6,344 for both daughters). (ECF No. 90 at 32 ¶ 177; ECF No. 90-14.)

On August 5, 2013, Detective Rick filed a Criminal Complaint and filed for an arrest warrant for Plaintiff. (ECF No. 90 at 32 ¶ 178, 35 ¶ 188; ECF No. 90-15.) Sometime in August

---

[3] Plaintiff alleges that this handwritten narrative was the first time Dallas alleged Plaintiff struck her, but Plaintiff also alleges that Dallas stated that she was physically abused when the allegations of sexual abuse surfaced in January 2013. (*See* ECF No. 90 at 20 ¶ 112.)

2013, Plaintiff turned himself in. (ECF No. 90 at 35 ¶ 190-91.) A preliminary hearing was held in November 2013, and Plaintiff's criminal trial in the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division began in July 2014. (*Id.* at 40 ¶ 204, 41 ¶ 213.) That court ultimately dismissed the charges against Plaintiff following a non-jury criminal trial. (*Id.* at 41 ¶¶ 213-14.)

Plaintiff filed an Amended Complaint on September 22, 2014, and a Second Amended Complaint on January 20, 2015, in the District Court for the Western District of Pennsylvania. (ECF Nos. 39, 90.) Detective Rick, the Kozel Defendants, and Defendant Spears filed respective Motions to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim. (ECF Nos. 93, 96, 99.) On February 16, 2015, the Kozel Defendants filed a Motion to Transfer Venue to this court. (ECF No. 102.) On August 6, 2015, the District Court for the Western District of Pennsylvania granted Detective Rick's Motion to Dismiss (ECF No. 93). (ECF No. 163.) On August 10, 2015, that court denied without prejudice the Kozel Defendants and Defendant Spears' Motions to Dismiss (ECF Nos. 96, 99), stating that the issues raised in the Motions should be raised on summary judgment "at the appropriate time." (ECF No. 164.) On the same day, that court also denied without prejudice the Kozel Defendants' Motion to Transfer Venue (ECF No. 102). (ECF No. 165.)

On August 31, 2015, Defendant Spears and the Kozel Defendants answered Plaintiff's Second Amended Complaint. (ECF Nos. 166, 167.) The Kozel Defendants filed an Errata Answer on September 1, 2015. (ECF No. 171.) In addition to filing an Answer, the Kozel Defendants filed a Renewed Motion to Transfer Venue to this court, and Plaintiff responded. (ECF Nos. 168, 198.) Defendant Spears also filed a Motion to Transfer Venue to this court (ECF No. 174), and Plaintiff responded. (ECF No. 199.) On May 23, 2016, Judge David Stewart Cercone, United

States District Judge for the Western District of Pennsylvania, granted Defendant Spears and the Kozel Defendants' Motions to Transfer Venue (ECF Nos. 168, 174), and ordered that this case be transferred to this court pursuant to 28 U.S.C. § 1404(a) (ECF No. 208).   The case was officially transferred on May 25, 2016.  (ECF No. 209.)

On October 17, 2016, Defendant Spears filed a Motion for Judgment on the Pleadings. (ECF No. 255.)  On September 29, 2017, the court denied Defendant Spears' Motion for Judgment on the Pleadings without prejudice and with leave to refile within ten (10) days to allow for the court to give the parties the opportunity to more thoroughly brief the choice of law issues within the case.  (ECF No. 266.)  Defendant Spears moved the court for an extension of time to respond (ECF No. 268), which the court granted.  (ECF No. 269).  Defendant Spears timely filed a Second Motion for Judgment on the Pleadings (ECF No. 270) on October 19, 2017.  Plaintiff timely responded to Defendant Spears' Motion (ECF No. 278), and Defendant Spears replied (ECF No. 279).

## II.   JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332 and 1367. Federal courts are courts of limited jurisdiction.  Under Section 1331, district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiff has stated a claim for malicious prosecution under 42 U.S.C. § 1983, a federal statute, thus federal question jurisdiction is proper.

District courts have ". . . supplemental jurisdiction over all [ ] claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a).  In addition to Plaintiff's Section 1983 claim, Plaintiff has also stated five state law causes of action against Defendant Spears: (1) common law malicious

prosecution, (2) civil conspiracy, (3) abuse of process, (4) intentional infliction of emotional distress, and (5) defamation *per se*.  (ECF No. 90 at 42-43 ¶¶ 220-26, 46-51 ¶¶ 241-72, 54-55 ¶¶ 298-308.)  These claims are connected to Plaintiff's Section 1983 cause of action and they are a part of the "same case or controversy."  Therefore, the court also has supplemental jurisdiction.

Additionally, this court has jurisdiction over this case pursuant to Section 1332 on the basis of diversity of citizenship.  In order for jurisdiction to be proper under Section 1332, there must be diversity of citizenship and the amount in controversy must be greater than $75,000.  28 U.S.C. § 1332(a).  Diversity of citizenship must be established at the time of the filing of the action in order for the court to determine if it has jurisdiction over the case pursuant to diversity of citizenship.  *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428 (1991).  Citizenship depends on domicile, not residency alone.  *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998).[4]

Plaintiff initially filed his Complaint on August 8, 2014 (ECF No. 1-1 at 2.)  At the time of filing, Plaintiff was a resident of Dallas County, Texas.  (*Id.* at 1.)  At the time of filing, Deborah was a resident of Spartanburg County, South Carolina, and so were Dallas and India.  (*Id.* at 1; *see also* ECF No. 90 at 1 ¶ 2, 2 ¶¶ 5-6.)  Defendant Spears is a licensed personal injury attorney who conducts business in Spartanburg, South Carolina.  (*Id.* at 2 ¶ 3.)  Plaintiff pleads that he has spent over $500,000 in legal fees, costs, and expenses in connection with the false allegations of sexual

---

[4]("[l]ooking, then, at the pleadings, and to such portions of the transcript as properly constitute the record, we find nothing beyond the naked averment of [defendant's] residence in Illinois, which, according to the uniform course of decisions in this court, is insufficient to show his citizenship in that State. *Citizenship and residence, as often declared by this court, are not synonymous terms.*") (citing *Robertson v. Cease*, 97 U.S. 646, 648 (1878)) (emphasis added).  Plaintiff's Second Amended Complaint only alleges the residency of each party, but Plaintiff's initial Complaint in the Western District of Pennsylvania alleges that he and Defendants are citizens of another state. (ECF No. 1-1 at 1.)

abuse, and requests judgment in his favor from all Defendants in excess of $75,000. (*Id.* at 42 ¶ 219, 44 ¶ 233, 45 ¶ 240, 47 ¶ 248, 49 ¶ 263, 51 ¶ 272, 55 ¶ 308.) Diversity of citizenship is present and the amount in controversy is greater than $75,000, thus jurisdiction under Section 1332 is proper. (*See id.* at 3 ¶ 11.)

### III. LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings have closed, but must do so early enough to avoid delaying trial. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims 'where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts.'" *Cont'l Cleaning Serv. v. United Parcel Serv., Inc.*, No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (quoting *Herbert Abstract v. Touchstone Properties, Inc.,* 914 F.2d 74, 76 (5th Cir. 1990)). A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Deutsche Bank Nat. Tr. Co. v. I.R.S.*, 361 F. App'x 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)). "[T]he key difference [between a 12(c) motion and a 12(b)(6) motion is that] the court is to consider the answer as well as the complaint." *Fitchett v. Cty. of Horry, S.C.*, No. 4:10-CV-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citing *Cont'l Cleaning Serv.,* 1999 WL 1939249, at *1).

"On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A complaint requires more than a statement simply alleging the defendants illegally harmed the plaintiff. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

Given that a Fed. R. Civ. P. 12(c) motion is decided under the same standard as a 12(b)(6) motion, all facts alleged in the complaint are presumed to be true, and all reasonable inferences must be drawn in Plaintiff's favor. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). However, the court is not required to accept the legal conclusions Plaintiff sets forth in his Complaint as true. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## IV.    ANALYSIS

a.  <u>Defendant Spears' Prior Motion to Dismiss</u>

Plaintiff asserts that Defendant Spears' Second Motion for Judgment on the Pleadings (ECF No. 270) asserts the same arguments that he made in his Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 99), which was filed in the Western District of Pennsylvania and rejected by Judge Cercone. (ECF No. 278 at 5.) Therefore, pursuant to the law of the case doctrine,[5] Plaintiff argues that the court should dismiss Defendant Spears' Motion for Judgment on the Pleadings. (*Id.*) Plaintiff further asserts that "Defendant Spears is undermining the judicial process to gain a litigation advantage in this case. . . . [attempting to get] this court to ignore the Western [District of] Pennsylvania [District] Court's prior rulings in order to gain perceived benefits of [South Carolina law]." (*Id.* at 7.)

Defendant Spears posits that Judge Cercone never examined his attorney immunity argument under South Carolina law, thus the law of the case doctrine is inapplicable. (ECF No.

---

[5] *See Arizona v. California*, 460 U.S. 605, 618 (1983) (". . . the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")

279 at 7 (citing *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) ("... [the law of the case doctrine] does not reach 'questions which might have been decided but were not.'") (citation omited))). Defendant Spears further posits that "[i]n denying [his] Motion to Dismiss without prejudice, Judge Cercone merely held that the issue of absolute judicial privilege was better suited for a motion for summary judgment." (ECF No. 279 at 7.) Moreover, Defendant Spears states that "[a]bsolute judicial privilege [ ] does not serve as the basis for [his Motion for Judgment on the Pleadings], which was filed on the basis of a choice-of-law analysis which mandates the application of attorney immunity under South Carolina law." (*Id.*) Lastly, Defendant Spears asserts that because "Judge Cercone did not undertake a choice-of-law analysis[, and] did not examine attorney immunity under South Carolina law, [he] did not reject its application[.]" (*Id.*)

In Defendant Spears' Motion to Dismiss (ECF No. 99), he maintained that the alleged causes of action against him should be "... dismissed based upon absolute judicial privilege and immunity as such claims are based upon communications occurring in the course of judicial proceedings which were material and pertinent to the redress sought." (ECF No. 99 at 3 ¶ 15.) Defendant Spears now moves the court for judgment on the pleadings, based on the assertion that "... [under South Carolina law], he is immune from liability for alleged conduct which took place in his professional capacity as attorney on behalf of his clients." (ECF No. 270 at 3 ¶ 15.) As will be discussed in a subsequent section, there is a difference between judicial privilege or judicial immunity, and attorney immunity. (*See* ECF No. 279 at 7.)

The court notes that the Kozel Defendants were ordered to answer Plaintiff's Second Amended Complaint (ECF No. 164 at 1), and pursuant to *Fitchett*, in deciding Defendant Spears' Motion for Judgment on the Pleadings, the court can consider the Answers to the Complaint, unlike

the standard for a motion to dismiss. 2011 WL 4435756, at *3. Therefore, Defendant Spears' Motion for Judgment on the Pleadings (ECF No. 270) is more expansive than Defendant Spears' previous Motion to Dismiss (ECF No. 99). The court also notes that Judge Cercone denied without prejudice Defendant Spears' Motion to Dismiss, allowing him to refile his Motion even after Judge Cercone ruled on his initial Motion to Dismiss. (ECF No. 164 at 1.)

In his Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 99), Defendant Spears did not raise the defense that he may be immune from liability for the alleged actions taken on behalf of his clients pursuant to South Carolina law. Consequently, Judge Cercone did not have the opportunity to rule on this defense. Therefore, the court finds that Defendant Spears is able to bring his Second Motion for Judgment on the Pleadings. *See Sejman*, 845 F.2d at 69.

   b. Malicious Prosecution Under 42 U.S.C. § 1983

Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights because they "caused to be filed a criminal complaint [against him] without probable cause." (ECF No. 90 at 54 ¶ 302); (*see also* ECF No. 260 at 30.) He further alleges that Defendants "falsely represented probable cause by dubious and inconsistent statements by the accusers" and "Defendants acted maliciously or for a purpose other than bringing [him] to justice." (ECF No. 90 at 55 ¶¶ 303, 307.) Lastly, Plaintiff alleges that Defendants made "false statements to law enforcement" in order to "harass, embarrass, and to obtain money from Plaintiff," and these statements led to criminal proceedings being initiated against Plaintiff. (*Id.* at 44 at ¶ 230, 45 ¶ 238, 46 ¶¶ 243, 247.)

Plaintiff alleges that "[t]he severity of the charges placed [his] case with the Sex Offender Court, a specialized docket with a rapidly proceeding court calendar, which gave him little time to cope with the socially stigmatizing charges[.]" (*Id.* at 41 ¶ 211.) If convicted, Plaintiff's charges

subjected him to a "substantial prison sentence likely measured by the duration of his natural life and requiring a mandatory, lifetime registration as a Megan's Law registered sex-offender."[6] (*Id.* at 41 ¶ 212.) Moreover, Plaintiff alleges that "[t]he public media reports of the false charges and the ensuing malicious prosecution have devastated [him] and his family." (*Id.* at 42 ¶ 217.)

Defendant Spears asserts he is immune from liability under Section 1983 because he was acting in his professional capacity as an attorney for his clients, the Kozel Defendants. (ECF No. 255-1 at 30; ECF No. 279 at 14.) Defendant Spears further asserts that Plaintiff's Section 1983 claim fails because he is not a state actor. (ECF Nos. 255-1 at 30; 279 at 15.) As will be discussed below, whether Defendant Spears acted in his professional capacity as an attorney for his alleged clients, the Kozel Defendants, is a disputed question of fact; therefore, the court will only address whether Defendant Spears as a private party can be liable for a violation of Section 1983.

In *Adickes v. S.H. Kress & Co.*, the Supreme Court of the United States distilled the requirements of Section 1983, stating that "(1) the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States and (2) the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" 398 U.S. 144, 150 (1970). "Private persons, jointly engaged with state officials in [a] prohibited action, are acting 'under color' of law for purposes of [Section 1983]." *United States v. Price*, 383 U.S. 787, 794 (1966)).

---

[6] "Megan's Law" is also known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 140171 et seq. (repealed 2009). The Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 et seq. is now the governing law on sex offender registration. *See* U.S. DEPARTMENT OF JUSTICE, SEX OFFENDER REGISTRATION AND NOTIFICATION IN THE UNITED STATES: CURRENT CASE LAW AND ISSUES 1 (July 2012), *available at https://www.smart.gov/caselaw/handbook_july2012.pdf.*

More specifically, in order to state a claim for malicious prosecution under Section 1983, Plaintiff must establish that there was not probable cause to bring the criminal proceedings against him. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("[a] malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.") (internal citations and quotations omitted); *Mckenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (an element of a malicious prosecution claim under Section 1983 is that it is initiated without probable cause); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (an element of a malicious prosecution under Section 1983 is that a plaintiff must prove that ". . . defendants prosecuted him with malice and without probable cause[.]" ) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).)

A private party can be liable for a violation of Section 1983 even if a state actor has already been dismissed from the case. *See Dennis v. Sparks*, 449 U.S. 24, 24 (1980) ("[p]rivate persons, jointly engaged with state officials in a challenged action, are acting 'under color' of law for purposes of § 1983 actions. And the judge's immunity from damages liability . . . does not change the character of his action or that of his co-conspirators.")  Detective Rick was the only state actor against whom this cause of action was alleged, and Judge Cercone granted Detective Rick's Motion to Dismiss Plaintiff's claims against him.  (ECF No. 163 at 14.)  Judge Cercone concluded that Plaintiff had not stated sufficient facts to state a claim under Section 1983 for false arrest, malicious prosecution, or failure to investigate because "[Detective Rick] had probable cause to

believe that [Plaintiff] had committed a crime after Dallas and India's first interviews."[7] (*Id.* at 11-13.) Plaintiff did not seek reconsideration of this Order, and therefore, it is the law of the case. *See Arizona v. California*, 460 U.S. at 618.

Judge Cercone found that Detective Rick's actions in arresting Plaintiff, therefore initiating a criminal proceeding against him, were not prohibited because Detective Rick had probable cause. (ECF No. 163 at 11-13.) The presence of a prohibited action is necessary for a private party to be in violation of Section 1983. *See Price*, 383 U.S. at 794. Thus, because Detective Rick's actions were not prohibited, even if Defendant Spears jointly engaged with Detective Rick to perform these actions, there would be no violation of Section 1983. *See Id.*

For this reason, the court grants Defendant Spears' Motion for Judgment on the Pleadings (ECF No. 270) as to Plaintiff's malicious prosecution claim under Section 1983.

c.  State Law Claims

This case was transferred from the United States District Court for the Western District of Pennsylvania to this court pursuant to 28 U.S.C. § 1404(a). (ECF Nos. 208, 209.) When a case is transferred from one district court to another, the choice-of-law rules of the transferor court should be applied. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (". . . the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."). The transferor court in this case is the District Court for the Western District

---

[7] As to Plaintiff's claim for false arrest under Section 1983, the absence of probable cause is also necessary for Plaintiff to prevail. *See Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (a claim for false arrest under Section 1983 ". . . cannot proceed if probable cause existed."). Additionally, as to Plaintiff's claim that Detective Rick violated Section 1983 for failing to investigate, ". . . once [the police officer] had established that there was sufficient probable cause to arrest [plaintiff], there was no need for additional investigations." *Vazquez v. Rossnagle*, 31 F. App'x 778, 779 (3d Cir. 2002).

of Pennsylvania, thus Pennsylvania's choice-of-law rules determine what state's laws will be applied to adjudicate Plaintiff's state law claims.

Under Pennsylvania law "[when] determining which state's law applies in tort [ ] disputes, Pennsylvania courts use the 'most significant relationship' test, which qualitatively weighs the parties' contacts with the forums 'according to their relation to the policies and interests underlying' the issues in dispute." *Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 609 (W.D. Pa. 2013) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007)). Pennsylvania's choice of law approach is a "flexible rule." *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964).

"The first step in Pennsylvania's choice-of-law analysis is to determine whether [an actual] conflict exists between the laws of the competing states. If no [actual] conflict exists, further analysis is unnecessary." *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 106 (Pa. Super. Ct.), *appeal denied*, 130 A.3d 1291 (Pa. 2015) (citation omitted); *see also Reginella Const. Co.*, 949 F. Supp. 2d at 610 ("[i]f there are no relevant differences between the substantive laws of the forums or the laws would produce the same result, no actual conflict exists, and the court may refer to the forums' laws interchangeably.") (citing *Hammersmith*, 480 F.3d at 229).

In *McDonald*, the court further stated that "an actual conflict exists if 'there are relevant differences between the laws.'" *McDonald*, 116 A.3d at 106 (citing *Hammersmith*, 480 F.3d at 230). If there is an actual conflict between the laws in multiple forums, then the second step in Pennsylvania's choice-of-law analysis is to classify whether or not the conflict is a "true conflict," "false conflict," or an "unprovided-for conflict." *McDonald*, 116 A.3d at 107 (citing *Cipolla v. Shaposka*, 267 A.2d 854, 855–56 (1970)). A true conflict occurs when the forums all have a governmental interest that would be impaired if their law was not applied. *Id.* (citing *Garcia v.*

*Plaza Oldsmobile, Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005)). If a true conflict exists between different forums' laws then the court must determine which forum has the greater interest in having its law applied. *Id.* (citing *Cipolla*, 267 A.2d at 856.) The court performs this analysis by determining the relevant contacts each forum has with the underlying case. *See Cipolla*, 267 A.2d at 856.[8] A false conflict occurs when only one forum has a governmental interest that would be impaired by the application of another forum's law. *Id.* (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)). If there is a false conflict, then the court uses the forum's law whose governmental interest would be impaired. *Id.* (citing *Lacey,* 932 F.2d at 187). An unprovided-for conflict means that no forum's interest would be impaired by not applying a specific forum's law. *Id.* (citing *Garcia*, 421 F.3d at 220).[9]

The forum ("state") laws that the court must address in this case are the state laws of Pennsylvania, South Carolina, and Arizona. The court must consider Pennsylvania law because the case was initially brought in Pennsylvania, and that is where Plaintiff's criminal trial occurred. (ECF Nos. 90 at 35 ¶¶ 188-190, 41 ¶ 213; 208 at 6, 12.) The court must consider South Carolina law because South Carolina is where the case was transferred and where the plan to "concoct criminal charges" was made. (ECF Nos. 90 at 3-4 ¶¶ 14, 17-18; 208 at 4-5, 7.) Lastly, the court must also consider Arizona law because that is where Dallas, while enrolled at Spring Ridge Academy in Arizona, first alleged that she was sexually abused. (ECF Nos. 90 at 4 ¶ 17, 5 ¶ 25, 22-23 ¶ 129; 208 at 7.)

---

[8] ". . . the contacts being relevant only if they related to the 'policies and interest underlying the particular issue before the court.'" (citing *Griffith*, 203 A.2d at 805).

[9] *See Garcia,* 421 F.3d at 220 ("[t]he principle of *lex loci delicti,* the law of the place of the wrong, supplies the substantive law to be applied in unprovided-for cases.")

In this case there are multiple causes of action, thus the court must determine if any conflict exists as to each claim in order to determine which state's law is applicable to each individual claim. *See Berg Chilling Sys., Inc. v. Hull Corp.,* 435 F.3d 455, 462 (3d Cir. 2006) ("[b]ecause choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as "depecage."); (*see also* ECF No. 260 at 21.)

I. <u>Attorney Immunity</u>

Defendant Spears argues that there is a conflict between the laws of Pennsylvania, South Carolina, and Arizona, particularly on the basis of the grant of immunity to attorneys while acting in their professional capacity. (ECF No. 270 at 3 ¶ 10.) He asserts that because of this conflict between the states' laws, South Carolina law should apply because South Carolina is the only jurisdiction with an interest in having its law applied. (*Id.* at ¶ 11.) He further posits that under South Carolina law, as an attorney acting within his professional capacity, he is immune from liability for Plaintiff's causes of action. (*Id.* at 4 ¶ 15; ECF No. 274 at 2-3.)

Defendant Spears attempts to apply the concept of attorney immunity under South Carolina law very broadly, merely assuming that he need only to be an attorney, but as a threshold matter, he needs to be (1) an attorney, (2) acting on behalf of a client, and (3) with the knowledge of his client.[10] *Gaar v. North Myrtle Beach Realty Co., Inc.*, 339 S.E.2d 887, 889 (S.C. Ct. App. 1986).

Plaintiff alleges that Defendant Spears is the Kozel Defendants' lawyer, either individually or collectively. (ECF No. 90 at 3 ¶ 14, 5 ¶ 26, 17 ¶ 97, 24 ¶ 134, 42 ¶ 221.) However, it is not

---

[10] The South Carolina Supreme Court's holding in *Stiles v. Onorato* states that *Gaar* does not provide an attorney immunity under any and all circumstances. 457 S.E.2d 601, 602 (S.C. 1995) (". . . an attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client."). As to malicious prosecution, an attorney must also act in good faith in order to be immune from liability. *Gaar*, 339 S.E.2d at 889.

clear whether Defendant Spears, was actually the Kozel Defendants' attorney, acting on their behalf or with their knowledge during the course of his alleged representation, particularly during the course of the criminal investigation and trial. (*See* ECF Nos. 260 at 1-2, 4-8; 278 at 2-4.) Defendant Spears was not the counsel of record for Dallas and India during Plaintiff's criminal trial; Margaret N. Fox, Esquire was their counsel. (ECF No. 90 at 40 at ¶ 206(b).) Margaret Fox is also counsel of record for the Kozel Defendants in this case. (*Id.* at 67.) Moreover, as will be discussed below, the Kozel Defendants and Defendant Spears give contradictory answers as to Defendant Spears' alleged attorney-client relationship to the Kozel Defendants.[11] (ECF Nos. 166 at 16 ¶ 98(b)-(e); 171 at 14 ¶ 82.) Furthermore, Plaintiff's causes of action against Defendant Spears challenge Defendant Spears' purported actions to conspire with the Kozel Defendants and to perpetrate a fraud against him. (*See* ECF Nos. 90 at 3 ¶ 14, 5-6 ¶ 26, 42 ¶¶ 220-26, 46 ¶ 247, 47 ¶ 253; 260 at 1-2, 6-8, 14-15.)

Plaintiff asserts that Defendant Spears is not protected under the doctrine of attorney immunity in any state because his relationship to the Kozel Defendants is unclear. (ECF No. 278 at 10, 14.) Because of this factual question regarding Defendant Spears' relationship with the Kozel Defendants, Plaintiff argues that a choice-of-law analysis is premature at this juncture in the case as answering this question ". . . can be probed only with the assistance of a fully developed record." (ECF No. 278 at 8 (citing *Reginella Const. Co., Ltd.*, 949 F. Supp. 2d at 609-10 (citations omitted)). The court disagrees. The court can perform a proper analysis by considering the Complaint and Defendants' Answers, as well as previous findings in this case. *See Fitchett,* 2011 WL 4435756, at *3 (in deciding a motion for judgment on the pleadings the court can consider

---

[11] Defendant Spears asserts that he has served as personal counsel to Deborah, as well as Dallas and India. (ECF No. 166 at 16-17 ¶ 98(b)-(e).) Whereas, the Kozel Defendants assert that Defendant Spears has only been personal counsel to Deborah. (ECF No. 171 at 14 ¶ 82.)

both the Complaint and Defendants' Answers); *Ligon v. Greenwood Cty. Det. Ctr.*, No. CA 6-10-2341-JMC, 2010 WL 5553455, at *1 (D.S.C. Nov. 18, 2010), *report and recommendation adopted*, No. 6:10-CV-02341-JMC, 2011 WL 52526 (D.S.C. Jan. 6, 2011) (a court can take notice of its own records).

In South Carolina, an attorney is immune from liability as long as he acts within their professional capacity, on behalf of a client, and with that client's knowledge. *Gaar*, 339 S.E.2d at 889. The Arizona Supreme Court recognizes the ". . . [ ] general rule that lawyers have no special privilege against civil suit." *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025. In Pennsylvania, "[t]he mere fact that one is an attorney acting in a professional capacity does not immunize him from responsibility for his wrongful acts. . . . [i]f an attorney is actuated by malicious motives or shares the illegal motives of his client, he may be personally liable with the client for damage suffered by a third person as a result of the attorney's actions." *Naughton v. Mercy Hosp.*, 4 Pa. D. & C.4th 628, 635–36 (Com. Pl. 1989) (citing *Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. Ct. 1984))).[12] However, "[a]n attorney is not liable with his client unless it can be shown that he has gone beyond the strict law of his duty." *Id.* (citing *Stein v. Schmitz,* 61 A.2d 260, 261 (N. J. 1948)).

Defendant Spears asserts that there is a distinction between attorney immunity and absolute judicial privilege. (*See* ECF No. 279 at 7.) Defendant Spears uses the term "judicial privilege," which is a privilege that is extended to judges and other actors within a judicial proceeding.[13] The

---

[12] *See also Rapid Circuits, Inc. v. Sun Nat. Bank,* No. CIV.A. 10-6401, 2011 WL 1666919, at *5 (E.D. Pa. May 3, 2011) (". . . notably regarding the immunity from liability for attorneys unless a complaint contains averments that counsel committed an intentional tort designed maliciously to cause harm, some Pennsylvania courts have permitted suits for defamation and for tortious interference with contractual relations to proceed against attorneys acting on behalf of, or in furtherance of interests related to those of, their clients.")

[13] *See Binder v. Triangle Publications, Inc.*, 275 A.2d 53, 56 (Pa. 1971) ("[t]he reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of

court construes Defendant Spears' use of "judicial privilege" to denote the "absolute privilege" granted to judicial actors for communications pertinent to a judicial proceeding. The court notes that there is a difference between an attorney's "communications" and an attorney's "conduct or actions." Therefore, an attorney may be immune from liability for either his communications or conduct, or both, depending on a state's law. *Compare Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 311 (3d Cir. 2003) ("[t]he judicial privilege – often referred to, in Pennsylvania, as 'judicial immunity' – extends to 'communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.'") (quoting *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986)), *and Green Acres Tr.*, 688 P.2d at 620-21 ("[a]s an immunity which focuses on the status of the actor, the privilege immunizes an attorney for statements made "*while performing his function as such.*") (citing Restatement (Second) of Torts § 586, Comment c.) (emphasis added), *and Crowell,* 392 S.E.2d at 466–67, *with Gaar*, 339 S.E.2d at 889 ("[i]n our opinion, the better rule is that an attorney is *immune from liability* to third persons arising from the *performance of his professional activities* as an attorney on behalf of and with the knowledge of his client.") (emphasis added).

---

defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests.); *Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984) ("[t]he privilege protects judges, parties, lawyers, witnesses and jurors. The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense.") (internal citations omitted); *Crowell v. Herring*, 392 S.E.2d 464, 466–67 (S.C. Ct. App. 1990) ("[t]he common law rule protecting statements of judges, parties and witnesses offered in the course of judicial proceedings from a cause of action in defamation is well recognized in this jurisdiction. . . . [w]e hold the absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it.")

a. *Attorney Immunity as to Common Law Malicious Prosecution and Abuse of Process*

The Pennsylvania General Assembly created a "wrongful use of civil proceedings" cause of action, known as the "Dragonetti Act," which codified the common law tort of malicious prosecution as to civil proceedings.[14] *See Matter of Larsen*, 616 A.2d 529, 587 (1992); *see also* 42 Pa. C. S. §§ 8351-54 (1980); *Villani v. Seibert*, 159 A.3d 478, 499 (Pa. 2017) (analyzing constitutionality of the Dragonetti Act). "Pursuant to the Act, an attorney (or any other person) 'who takes part in the procurement, initiation or continuation of civil proceedings against another' may be liable [in wrongfully using civil proceedings] for a variety of damages, including, inter alia, harm to reputation, emotional distress, pecuniary losses, attorney fees, and punitive damages." *Villani*, 159 A.3d at 500 (citing 42 Pa. C. S. § 8353) (Donohue, J., dissenting). The Dragonetti Act's constitutionality was challenged under the Pennsylvania State Constitution, but in *Villani* the Pennsylvania Supreme Court held that it was constitutional, and held that the court should not ". . . *per se* immunize attorneys, as attorneys, from the application of the substantive tort principles promulgated by the political branch in the Dragonetti Act." *Id.* at 492-93.

The Dragonetti Act dealt specifically with the initiation of "civil proceedings" and did not address the initiation of "criminal proceedings," which are still governed by Pennsylvania common law. *See Hess v. Lancaster Cty.*, 514 A.2d 681, 683 (Pa. Commw. Ct. 1986).[15] Pursuant to

---

[14] *See Shaffer v. Stewart*, 473 A.2d 1017, 1019 (1984) ("the malicious use of process, which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause. . . . [ ] must be distinguished from the separate and distinct tort of abuse of process which occurs when the legal process is utilized for some unlawful purpose, not one for which it was intended.")

[15] "The law in Pennsylvania on malicious prosecution is based on the *Restatement (Second) of Torts.* Section 653 reads: '[a] private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused.'"

*Naughton,* an attorney can be liable for the tort of malicious prosecution even if acting within his professional capacity. 4 Pa. D. & C.4th 628; *see also Adelman v. Rosenbaum*, 3 A.2d 15, 18 (Pa. Super. Ct. 1938) ("[a]n attorney is personally liable to a third party when he is guilty of fraud, collusion, or a malicious or tortious act, and he is liable, as anyone else, when he encourages and induces another to commit a trespass."); (ECF No. 274 at 12.) Moreover, as to abuse of process in Pennsylvania, "'[a]n attorney may be held liable for an abuse of process, where the acts complained of are his own personal acts, or the acts of others wholly instigated and carried on by him.'" *Adelman,* 3 A.2d at 18 (citing 1 Am. Jur. p. 189, § 31); *see also Gen. Refractories Co.,* 337 F.3d 297, 312 (3d Cir. 2003) ("[t]he mere existence of the abuse of process tort is evidence that [the absolute] privilege applies to a much narrower range of activity than the attorney appellees urge. Where judicial process is being perverted, immunity would impede, not further, the interests protected by the [absolute] privilege.")

In Arizona, "[t]he privilege an attorney has for his actions in representing a client is a qualified one that does not extend to the intentional torts of malicious prosecution and abuse of process." *McElhanon v. Hing,* 728 P.2d 256, 264 (Ariz. Ct. App. 1985), *aff'd in part, vacated in part on other grounds*, 728 P.2d 273 (Ariz. 1986).

South Carolina provides attorney immunity for malicious prosecution and abuse of process so long as an attorney is acting within his professional capacity, on behalf of and with the knowledge of his client, and did not act in bad faith.[16] *Gaar*, 339 S.E.2d at 889; *see also Bertwell v. Allstate Ins. Co.*, No. C.A. 007-3875-CMC, 2008 WL 304735, at *3 (D.S.C. Jan. 31, 2008) (plaintiff brought a claim for abuse of process (among other claims), and the court dismissed the case pursuant to *Gaar.*)

---

[16] "Bad faith" is only relevant to the malicious prosecution claim.

Conflict Between South Carolina, Pennsylvania, and Arizona Law

Arizona and Pennsylvania's laws are similar, in that an attorney acting within his professional capacity may be liable for malicious prosecution or abuse of process. *See McElhanon,* 728 P.2d at 264; *Naughton,* 4 Pa. D. & C.4th at 635–36. However, South Carolina law is different. *See Gaar*, 339 S.E.2d at 889. Because there is a conflict between the states' laws, pursuant to Pennsylvania choice of law rules, the court must determine whether there is a "true conflict" or a "false conflict" by referring to the relevant governmental interests that exist as to each state. *See McDonald,* 116 A.3d at 107 (citing *Cipolla,* 267 A.2d at 855–56).

Arizona has an attorney-protecting rule, taking into consideration the role of the attorney in a judicial proceeding. *See Bird v. Rothman*, 627 P.2d 1097, 1099 (Ariz. Ct. App. 1981), *cert. denied* 454 U.S. 865 (1981) ("[t]he balance between freedom of access to the courts and compensating a defendant from unwarranted prosecution and discouraging unmeritorious litigation must be struck in favor of allowing the attorney, as an officer of the court, the freedom to present his case as vigorously as the rules of law and professional ethics will permit."). However, as stated above, attorneys in Arizona can be liable for malicious prosecution and abuse of process, even while acting in their professional capacity. *See McElhanon,* 728 P.2d at 264. Arizona's only connection to this case is that, while enrolled at Spring Ridge Academy in Arizona, Dallas first alleged that Plaintiff sexually abused her. (ECF No. 90 at 22 ¶ 129; *see also* ECF No. 208 at 9.) However, Defendant Spears does not practice law in Arizona, and moreover, no party is an Arizona resident or citizen. Therefore, Arizona's interests will not be impaired in applying another state's laws regarding malicious prosecution and abuse of process.

Pennsylvania has an interest in protecting its citizens from malicious suits. *See Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 31 (Pa. Super. Ct. 1990) (". . . by making it easier to

establish a case of malicious prosecution, the Pennsylvania legislature has expressed an interest in providing greater protection to those individuals and entities who may be forced to defend a baseless suit. Pennsylvania's interest in protecting its citizens from being subjected to a maliciously brought lawsuit is involved in this case, as three of the defendants in the underlying Texas state suit are Pennsylvania residents.")  However, in this case, Pennsylvania's governmental interest in protecting its citizens and allowing them to seek remedial action against an attorney will not be impaired because there are no Pennsylvania residents or citizens involved in this action.[17] Plaintiff is a resident of Texas and has not been a resident of Pennsylvania since 2010.  (ECF No. 90 at 1 ¶ 1; *see also* ECF No. 278 at 27.)

The Kozel Defendants are South Carolina residents, and most importantly Defendant Spears is a licensed South Carolina attorney. (ECF No. 90 at 1-2 ¶¶ 2-3, 5-6.)  South Carolina has a rule protecting attorneys from suits for malicious prosecution and abuse of process while acting within their professional capacity.  *See Gaar*, 339 S.E.2d 889 ("[the South Carolina] Supreme Court has cautioned against allowing suits for malicious prosecution to inhibit free access to the courts.  Attorneys must be free to act and advise their clients without constant fear of harassment from lawsuits.") (internal citations omitted).  Moreover, in transferring this case, Judge Cercone found that "[t]he majority of the alleged wrongful conduct [in this case] occurred in South Carolina [.]"  (ECF No. 208 at 9-10.)

There is a false conflict as to the application of attorney immunity to the claims of malicious prosecution and abuse of process, because neither Pennsylvania nor Arizona's governmental interest will be impaired if their state laws are not applied.  South Carolina is the only state whose

---

[17] *See Rosen*, 582 A.2d at 31 (Pennsylvania has an interest in ". . . discouraging maliciously brought suits which require its citizens to spend time and money defending themselves[.]").

governmental interest will be impaired if its law is not applied in this case. Thus, the court will apply South Carolina's law regarding attorney immunity in the context of malicious prosecution and abuse of process.

        b. *Attorney Immunity as to Civil Conspiracy*

As to Pennsylvania, in *Heffernan v. Hunter*, the United States Court of Appeals for the Third Circuit stated that "[ ] the mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation [of their clients], does not remove their conduct from the scope of the agency [relationship with their clients]." 189 F.3d 405, 413 (3d Cir. 1999). The Third Circuit noted in *Heffernan* that a conspiracy between a corporation and an officer (in that case an attorney) may exist "if the officer is acting in a personal, as opposed to official, capacity." 189 F.3d at 412 (quoting *Robison v. Canterbury Village, Inc.*, 848 F.2d 424 (3d. Cir. 1988)). In *Gen. Refractories Co.*, applying Pennsylvania law, the Third Circuit relied upon the court's holding in *Heffernan* to affirm the dismissal of a civil conspiracy cause of action against a defendant attorney. 337 F.3d at 313 ("[t]he District Court, relying exclusively on our opinion in *Heffernan*, concluded that the Complaint contained no allegation that the attorney appellees acted outside the scope of their representation [therefore, there could be no claim for civil conspiracy against the attorneys].") (internal citation omitted); *see also Stout v. Selective Way Ins. Co.*, No. 3020 EDA 2009, 2010 WL 2034637 (Pa. Com. Pl. 2010) ("[o]ur Superior Court echoes the holdings of the Court of Appeals for the Third Circuit [in *Heffernan*], which steadfastly concludes that a conspiracy cannot exist where an attorney's advice or advocacy is for the benefit of his client, rather than for the attorney's sole personal benefit.")

The state of Arizona does not recognize a cause of action for civil conspiracy, but does recognize a cause of action for "damages caused by acts committed pursuant to a conspiracy."

*Wojtunik v. Kealy*, 394 F. Supp. 2d 1149 (D. Ariz. 2005) (quoting *Estate of Hernandez v. Flavio*, 930 P.2d 1309, 1313 (Ariz. 1997)).  "Under Arizona law, for a conspiracy action to lie, 'two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages.'" *Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F. Supp. 2d 1144, 1150 (D. Ariz. 2009) (quoting *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002)).  As to attorney immunity for civil conspiracy, attorneys "have no special privilege against civil suit." *Safeway Ins. Co.*, 106 P.3d at 1025; *see also McElhanon*, 728 P.2d at 264 ("[w]e [the Court of Appeals of Arizona] disagree [with the position that being an attorney for a client] shields [an attorney] from liability for his alleged participation in a conspiracy involving a fraudulent conveyance. . . [n]or should the privilege apply to the intentional acts of furthering and participating in a fraudulent conveyance.")

In South Carolina, an attorney may be liable for civil conspiracy when ". . . in addition to representing [a] client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client."  *See Stiles*, 457 S.E.2d at 602.

Conflict Between South Carolina, Pennsylvania, and Arizona Law

There is an actual conflict between the laws of the three jurisdictions because an attorney can be liable for a civil conspiracy in each state if he either breaches an independent duty to a third-party, or acts in his own personal interest outside of representing a client; but in Arizona, even if an attorney's conduct does not rise to this level, he may still be liable. *See Safeway Ins. Co.*, 106 P.3d at 1025; *McElhanon*, 728 P.2d at 264.  However, this is a false conflict, because none of the Defendants are citizens or residents of Arizona, and Defendant Spears does not practice law in

Arizona, thus Arizona's governmental interest will not be impaired if another state's law is used. There is no difference between South Carolina and Pennsylvania law, thus neither state's governmental interest will be impaired by using another state's laws. Therefore, the court will apply South Carolina's law regarding attorney immunity in the context of civil conspiracy.

<em>c. Attorney Immunity as to Intentional Infliction of Emotional Distress</em>

Pennsylvania courts have not specifically addressed immunity for an attorney's conduct in the context of intentional infliction of emotional distress (IIED), but have addressed whether an attorney's communications are privileged in the context of IIED. In *Thompson v. Sikov*, the Pennsylvania Superior Court found that an attorney's statements made at the end of the trial were not sufficient to establish a cause of action for IIED because they were privileged. 490 A.2d 472, 474 (Pa. Super. Ct. 1985). Communications made by an attorney that are pertinent to a judicial proceeding, even if malicious, are still privileged. *See Post*, 485 A.2d 1176, 1181 (Pa. Super. Ct. 1984), *rev'd on other grounds*, 507 A.2d 351 (Pa. 1986) ("[w]e see no reason why the cloak of immunity should not also be draped over an attorney's communications with the court before whom he is litigating, provided, of course, the matter is relevant and pertinent to the dispute being heard." (citations omitted)). However, there is a distinction between an attorney's statements which may be privileged, and an attorney's conduct in representing a client, for which an attorney may or may not have immunity. Pursuant to *Smith v. Griffiths*, "[i]f an attorney's conduct is motivated by malice or if he commits an intentional tort[,]. . . he may become personally liable for damage suffered by a third person." 476 A.2d at 26; *see also Naughton,* 4 Pa. D. & C.4th at 635–36.

Arizona courts have not addressed attorney immunity or absolute privilege within the context of IIED, but have stated that ". . . lawyers have no special privilege against civil suit." *Safeway Ins. Co.*, 106 P.3d at 1025.

In *Bertwell*, South Carolina courts tangentially addressed immunity for an attorney's conduct in the context of IIED, finding that the plaintiff had ". . . failed to allege facts which would give rise to any independent duty running from [the lawyer] to [plaintiff], . . . or allege any facts which would support a finding that [the attorney] acted in that litigation for his own personal benefit outside the scope of his representation of [the company][,]" thus, pursuant to the standard for attorney immunity set forth in *Gaar*, the plaintiff's claims were dismissed. 2008 WL 304735, at *3.

<u>Conflict Between South Carolina, Pennsylvania, and Arizona Law</u>

There is an actual conflict between the state's laws. Pennsylvania does not specifically address immunity for an attorney's conduct in the context of IIED, but under Pennsylvania state law, an attorney can be liable if he committed an intentional tort or acted with malice. *See Smith*, 476 A.2d at 26. Thus, in Pennsylvania, an attorney could be liable for IIED, even if the action was within his professional capacity. *Id.* Arizona does not extend any special privilege against civil suit to attorneys. Therefore, similar to Pennsylvania, it is plausible that an attorney's conduct could subject him to liability for IIED, even in a professional capacity. *See Safeway Ins. Co.*, 106 P.3d at 1025. South Carolina, however, provides immunity to an attorney for a claim of IIED if the attorney acted within his professional capacity, as an attorney on behalf of and with the knowledge of a client. *See Gaar*, 339 S.E.2d at 889; *Bertwell,* 2008 WL 304735, at *3.

This conflict between each state's laws is a false conflict as no party is a citizen of Arizona or Pennsylvania, and Defendant Spears practices law in South Carolina. Therefore, neither state's

governmental interest would be impaired if its laws are not applied. South Carolina has a rule protecting South Carolina attorneys from liability for actions taken within their professional capacity, and South Carolina's governmental interest would be impaired if South Carolina law is not applied. Therefore, the court will apply South Carolina's law regarding attorney immunity in the context of IIED.

### d. Attorney Immunity as to Defamation Per Se

In this case, Plaintiff alleges that "Defendants made materially false claims of sexual abuse against Mr. Kozel to [the police in Arizona and Pennsylvania], and other parties, in order to cause his arrest and prosecution." (ECF No. 90 at 48 ¶ 258.) In each state, an attorney's communications relating to a judicial proceeding are privileged, and an attorney cannot be held liable for the potentially defamatory nature of these communications. *See Panitz v. Behrend,* 632 A.2d 562, 564 (Pa. Super. Ct. 1993) ("[a]s a general rule there is no civil liability for statements made in the pleadings or during trial or argument of a case so long as the statements are pertinent.) (citing *Post*, 507 A.2d at 355); *Ashton-Blair v. Merrill*, 928 P.2d 1244, 1246 (Ariz. Ct. App. 1996) ("[p]ersons making allegedly defamatory statements in connection with a judicial proceeding are protected "so long as such statements bear some relationship to the proceeding.") (citing *Drummond v. Stahl*, 618 P.2d 616, 620 (Ariz. Ct. App. 1980), *cert. denied*, 450 U.S. 967 (1981)); *Crowell,* 392 S.E.2d at 466-67 (judges, witnesses, and attorneys have protection from a cause of action for defamation as long as their communications are part of a judicial proceeding and relevant to an issue therein). There are two forms of defamatory communications, libel (which concerns a writing) and slander (which concerns oral statements), both which involve forms of communication, not conduct. *See* Restatement (Second) of Torts § 568. Therefore, the court will address whether there is any

conflict as to each state's laws regarding absolute privilege, rather than the concept of attorney immunity in each state.

There is no conflict between the states' laws regarding absolute privilege, because an attorney's communications in each of the three jurisdictions will be privileged as long as they are relevant to a judicial proceeding. Therefore, Defendant Spears' statements may be privileged under the laws of any of the three states, depending on (1) whether he was acting as an attorney for the Kozel Defendants, and (2) whether his alleged statements were relevant to Plaintiff's criminal trial. However, the court will not make a determination as to whether Defendant Spears' alleged statements were relevant to Plaintiff's criminal trial because the alleged attorney-client relationship between Defendant Spears and the Kozel Defendants is disputed.

II.    Defendant Spears' Role as an Attorney

The court must now determine whether Defendant Spears was acting in his professional capacity as an attorney to the Kozel Defendants, which may immunize him from Plaintiff's causes of action pursuant to South Carolina law as established above.

Defendant Spears moved for judgment on the pleadings on the basis that "[g]iven the application of [attorney] immunity as applied in *Gaar*, [he] is not liable for any cause of action alleged by Plaintiff." (ECF No. 274 at 2.) He also argues that "[t]he application of South Carolina law on this issue [of attorney immunity] is dispositive of the *entire case* as against [him], rendering unnecessary a choice-of-law analysis on each issue where a conflict may arise between the laws of each jurisdiction at this stage of the proceedings." (*Id.* at 31 (emphasis in original).) Defendant Spears does not make an argument as to whether Plaintiff has sufficiently pled each state law cause

of action, therefore the sufficiency of Plaintiff's pleading as to each of those causes of action is not before the court and will not be addressed.[18]

In order for Defendant Spears to assert immunity, (1) he must have been performing a professional activity, (2) taken on behalf of a client, (3) with the knowledge of his client. *See Gaar*, 339 S.E.2d at 889.

For the court to grant a motion for judgment on the pleadings, there must be no disputed material facts. *Cont'l Cleaning Serv.*, 1999 WL 1939249, at *1. Plaintiff argues that "an attorney-client relationship did not exist between Defendant Spears and the Kozel Defendants, individually or collectively, with regard to the underlying criminal investigation and criminal prosecution of [Plaintiff] in Pennsylvania." (ECF No. 278 at 2.) Plaintiff further argues that this lack of clarity as to Defendant Spears' relationship with the Kozel Defendants creates an issue of material fact. (*Id.* at 22.)

Plaintiff alleges that Defendant Spears is Deborah's attorney, stating that "[t]his action involves a disturbing fraud, perpetrated as outlined in this Second Amended Complaint, by a mother and ex-wife, Deborah Kozel, with her *personal injury lawyer,* Spears . . . involving concocted criminal charges against [Plaintiff]." (ECF No. 90 at 3 ¶ 14 (emphasis added), 24 ¶ 134.) In addition to Plaintiff's allegations regarding Defendant Spears serving only as Deborah's attorney, Plaintiff also alleges that Defendant Spears served as the Kozel Defendants' lawyer collectively. (*Id.* at 5 ¶ 26, 42 ¶ 221.)

Plaintiff also includes references to testimony by Deborah and Dallas, stating that Defendant Spears is neither Deborah's lawyer, nor Dallas's lawyer. (*See Id.* at 17 ¶ 98(e)-(g));

---

[18] Defendant Spears' prior Motion to Dismiss (ECF No. 99) was dismissed without prejudice, but he filed a Motion for Judgment on the Pleadings rather than refiling his Motion to Dismiss.

(*see also* ECF No. 90-16 at 2:10-15, 5:13-15; ECF No. 90-19 at 2:10-13.) However, the court cannot consider this testimony because the court can only consider the Complaint itself, Answers to the Complaint, any judicially noted facts, and documents that are "integral to the Complaint and authentic," in ruling on a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 10(c) ("a copy of a written instrument which is an exhibit to a pleading is a part thereof for all purposes"); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (citing *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)) (explaining what the court can consider at the motion to dismiss phase); *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ("[a]n integral document is a document that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'") (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)) (emphasis in original);[19] *Fitchett*, 2011 WL 4435756, at *3 (courts can consider the complaint as well as the answer in considering a motion for judgment on the pleadings); *Cont'l Cleaning Serv.*, 1999 WL 1939249, at *1. Deborah and Dallas's deposition testimony is not integral to the Complaint, because it is neither a pleading or judicially noticed fact, and it is not a document that gives rise to the legal rights that Plaintiff asserts. *See Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611.

Defendant Spears' Answer to the Complaint states that "he has, over the years, served as personal counsel to [to both Deborah, and to Dallas and India]." (ECF No. 166 at 16-17 ¶ 98(b)-

---

[19] *See also id.* at 611 n.4 ("[a]s examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'") (citing *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 (D. Md. 2010)); *South Carolina v. United States*, No. 1:16-CV-00391-JMC, 2017 WL 976298, at *5 (D.S.C. Mar. 14, 2017) (the Fourth Circuit does not have a "settled" standard for making a determination as to whether a document is "integral.").

(e).)[20]   However, the Kozel Defendants' Errata Answer states that Defendant Spears "over the years, [has] served as personal counsel [only] to Debbie [(Deborah)]." (ECF No. 171 at 14 ¶ 82(ii)-(iii).)  Defendants' contradictory admissions create a dispute as to the nature of Defendant Spears' relationship with the Kozel Defendants.

In deciding a motion for judgment on the pleadings, "all facts alleged in the complaint are presumed to be true, and all reasonable inferences must be drawn in Plaintiff's favor."  *Martin,* 980 F.2d at 952.  Reviewing both the Complaint and the Answers to the Complaint, and drawing all reasonable inferences in favor of Plaintiff, a dispute as to a material fact exists.  The court is not able to ascertain what role Defendant Spears served in the underlying criminal proceedings, and whether he served as an attorney for the Kozel Defendants.

Different courts in South Carolina have had to determine whether an attorney is immune from liability pursuant to *Gaar* at the motion to dismiss stage of the proceedings. In each case a threshold inquiry was whether an attorney-client relationship was present, if it was not already an undisputed fact.[21]   In this case, there is a dispute as to the existence of an attorney-client

---

[20] Defendant Spears filed a Support Complaint on behalf of Deborah in May 2012.  (ECF Nos. 90 at 17 ¶ 98(a); 90-3.)

[21] *See Stiles,* 457 S.E.2d at 603 (court found that plaintiff's attorney acted at all times in his professional capacity as an attorney on behalf of his client.  Moreover, the third-party plaintiff did not plead that the attorney acted outside of his professional capacity, or that he breached some independent duty owed to third-party plaintiff; and granted the attorney's motion to dismiss on the basis of attorney immunity); *Douglass ex rel. Louthian v. Boyce*, 519 S.E.2d 802, 806 (S.C. Ct. App. 1999), aff'd, 542 S.E.2d 715 (S.C. 2001) (same)*; Hunt v. Mortg. Elec. Registration*, 522 F. Supp. 2d 749, 757-59 (D.S.C. 2007) (same); *Fleming v. Asbill*, 42 F.3d at 890 (same); *Bertwell v. Allstate Ins. Co.*, 2008 WL 304735, at *1 (D.S.C. Jan. 31, 2008) (same); *But see Rydde v. Morris*, 675 S.E.2d 431, 435 (S.C. 2009) (court held that in order to maintain a legal malpractice claim, there must be an attorney-client relationship, which is not present in this case. "An attorney owes no duty to a prospective beneficiary of a non-existent will."); *Gallipeau v. Correct Care Sols.*, No. CIV.A. 3:10-2017-JFA, 2011 WL 4502062, at *2 (D.S.C. Aug. 5, 2011), *report and recommendation adopted*, No. CA 3:10-2017-JFA-JRM, 2011 WL 4502043 (D.S.C. Sept. 29, 2011) ("South Carolina courts have held that no fiduciary relationship exists between an attorney and his client's adversary."); *Sain v. HSBC Mortg. Servs., Inc.*, No. CA 4:08-2856-TLW-TER,

relationship between Defendant Spears and the Kozel Defendants. Therefore, because an essential element of the affirmative defense of attorney immunity is absent, the court cannot grant Defendant Spears' Motion for Judgment on the Pleadings (ECF No. 270) as to Plaintiff's state law claims on the basis of attorney immunity.

## V.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** Defendant Spears' Second Motion for Judgment on the Pleadings (ECF No. 270) as to Plaintiff's claim for Malicious Prosecution under 42 U.S.C. § 1983. The court **DENIES IN PART** Defendant Spears' Motion for Judgment on the Pleadings (ECF No. 270) as to Plaintiff's claims for civil conspiracy, common law malicious prosecution, abuse of process, defamation *per se*, and intentional infliction of emotional distress.

**IT IS SO ORDERED.**

---

2009 WL 2858993, at *2 (D.S.C. Aug. 28, 2009) ("if an attorney falls within the definition of debt collector under the Fair Debt Collection Practices Act, [he is] not immune from suit."); *Hunt v. Greenville Cty.* S.C., No. CIVA 608-857-HFF-BHH, 2008 WL 4844756, at *7 (D.S.C. Nov. 7, 2008), *aff'd*, 322 F. App'x 308 (4th Cir. 2009) (the attorney's actions (in their representation of defendant) "appears to roughly rise to the quality of bad faith noted in *Stiles*, which if established, would pierce the shield of immunity normally enjoyed [by the attorney]. Of course, [the attorney's] immunity may easily be established upon submission of evidence on a motion for summary judgment but a ruling now would be premature."); *In re Ladd*, No. AP 12-80238-DD, 2013 WL 4266856, at *1 (Bankr. D.S.C. Aug. 9, 2013) ("[a]ssuming [that the law firm was involved in the forgery alleged], the [law firm] may not have been acting in good faith. Moreover, it may have breached an independent duty to a third person[,]" therefore the court did not extend attorney immunity.)

_J. Michelle Childs_

United States District Judge

March 8, 2018

Columbia, South Carolina